## Kokas v. Commonwealth.

(Decided February 28, 1922.)

### Appeal from Fayette Circuit Court.

1. Criminal Law—Presence at Trial of One Charged With Felony.—As by the provisions of the Constitution, section 11, Bill of Rights, and the provisions of the Criminal Code, section 183, the trial of one charged with the commission of a felony must be had in his presence it necessarily follows that he must be present during the trial; that is, at all stages of the trial, which begins with the swearing of the jury and ends when the verdict is rendered.

2. Criminal Law—Presence at Trial of One Charged With Felony.— "The right to be heard by himself and counsel," guaranteed the accused by section 11, Bill of Rights, Constitution, embraces the right to be present himself and to have a reasonable opportunity to have his counsel present, also, at every step in the progress of the trial; and to deprive him of this right is a violation of that provision of the fundamental law.

3. Criminal Law—Protection of Accused in Certain Rights.—In Capital cases there are some rights so securely preserved to the accused by the Constitution that he may avail himself of their protection, although he has failed to observe the rules of practice requiring an objection to be made or an exception to be saved, in order that an error committed by the trial court may be taken advantage of on appeal.

4. Criminal Law—Infliction of Capital Punishment—Presence of Accused at Trial.—In a criminal case in which the infliction of capital punishment is authorized by law, the accused cannot waive his constitutional right to be present, both in person and by counsel, at every step in the progress of the trial; and it necessarily follows that if such right cannot be waived by the accused, it cannot be waived for him by counsel when he is present, or in his absence.

5. Rape—Reading Stenographic Notes to Jury After Submission of Case.—In this case, resulting in a verdict and judgment convicting the appellant of rape upon a female under twelve years of age, and fixing his punishment at death, the action of the trial court, after the submission of the case and in the absence of the accused, though with the consent of his counsel then present, in sending its official stenographer to the jury room and permitting him, while there alone with the jury for more than an hour, to read to them from his stenographic notes certain portions of the Commonwealth's evidence and converse with them regarding the evidence thus read, was such error as, on appeal, compels the reversal of the judgment.

6. Criminal Law—Constitutional Law—Subjects and Titles of Acts.— For the reasons set forth in Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, and cases therein cited, chapter 163, Acts 1920, under which the appellant was indicted and tried is not violative of section 51, Constitution.

MILLER & MILLER and MAURY KEMPER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Louis Kokas, following his indictment for the crime of rape, alleged to have been committed upon the person of Nannie May Clem, a female under 12 years of age, was tried in the court below, by verdict of the jury found guilty of the crime charged and given, by way of punishment, the death penalty to be inflicted by hanging. He was refused a new trial and has appealed from the judgment entered upon the verdict.

One of the grounds urged by the appellant for a reversal of the judgment is, that error was committed by the trial court in permitting its official stenographer, after the submission of the case to the jury and while they were deliberating upon their verdict, to enter the jury room and read to the jury from his stenographic notes of the evidence as made during the trial, portions thereof as

requested by the jury. It appears from the affidavit of the official stenographer, which was filed in the court below on the appellant's motion for a new trial, that he was not sworn as a witness before or after entering the jury room; that only he and the members of the jury were present while he was in the jury room and that he remained with the jury in the room more than an hour and perhaps as long as an hour and a half. It also appears from his affidavit that he read to the jury disconnectedly only such portions of the evidence as they asked to have read, which was exclusively evidence in behalf of the Commonwealth; and that during the reading from his notes there was a lot of talking by the members of the jury and some by affiant, who was able to recall but little that was said.

It appears from the record that in sending the official stenographer with his notes of the evidence to the jury room the court acted upon a request from the jury, made through the sheriff having them in charge, that it be done, but that both at the time the request was made and granted, the appellant was not in court but in a cell of the county jail, and it is admitted that he did not know of or consent to the sending of the official stenographer to the jury room or to the reading of his notes of the evidence to the jury. It appears, however, that the attorney who acted as appellant's counsel on the trial, but later retired from the case, was then present and stated that he did not object to the court's sending the official stenographer to the jury room for the purpose of reading his notes of the evidence to the jury; but this was said in the appellant's absence and without his knowledge.

The rule of the common law that the trial of one charged with a felony must be had in his presence, was regarded by the framers of the several Constitutions of this state as of such supreme importance that it was set forth in meaning, though not in the exact language of the common law, in each of them. In our present Constitution it is expressed in section 11, Bill of Rights, which, among other things, provides:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel . . . , to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor . . . ."

The necessity of the presence of the accused during the trial of a felony is also made imperative by the Criminal Code of Practice, section 183, which provides:

"If the indictment be for a felony, the defendant must be present, and shall remain in actual custody during the trial . . . ."

The words "during the trial" have repeatedly been held to embrace all stages of the trial, which, as also held, begins with the swearing of the jury and ends when the verdict is rendered. Allen v. Comlth, 86 Ky. 642; Willis v. Comlth, 85 Ky. 68; Collier v. Comlth, 110 Ky. 516; Tye v. Comlth, 3 Rep. 59; Cooley's Const. Limitations, p. 319. In Allen v. Comlth, *supra,* the constitutional right of the accused. was defined in the following language, quoted with approval from the opinion in the earlier case of Temple v. Comlth, 14 Bush 769:

"The right to be 'heard by himself and counsel,' embraces the right to be present himself, and to have a reasonable opportunity to have his counsel present, also, at every step in the progress of the trial; and to deprive him of this right is a violation of that provision of the fundamental law."

Temple v. Comlth and Allen v. Comlth, *supra,* were cases in each of which the crime charged was a felony, the conviction in each being for voluntary manslaughter. The judgment in the Temple case was reversed on appeal because the verdict of the jury was received in the absence of the accused and when he was confined in jail. The Allen case was submitted to the jury in the absence of the accused, which was strongly condemned by this court as error, but as the judgment had to be reversed on another ground it was held unnecessary to determine whether the error was prejudicial.

There have been a few other cases of conviction for felony in this jurisdiction in each of which a reversal of the judgment of the trial court was refused, notwithstanding error committed by that court in permitting, during the trial and in the absence of the accused, some act to be done or step taken, which should have been done or taken only when he was present. One of these cases is Hite v. Comlth, 14 L. Rep. 308, in which it was held that the occasional absence from the court room of the accused, on account of temporary illness, for a few minutes at a time, the trial continuing in his absence, did not so prejudice his substantial rights as to compel a reversal of the judg-

ment of conviction. Another such case was Meece v. Comlth, 78 Ky. 586, in which one of the grounds urged for the reversal of the judgment of conviction was error of the trial court in adding to an instruction by interlineation, in the absence of the defendant, but in the presence of his counsel, certain words not of themselves objectionable, which was done after the submission of the case in obedience to a request from the jury, made following their return to the court room, that they be further instructed upon the point covered by the interlineation.

Although it was declared by the opinion that "the presence of the accused when instructions are given or modified is essential to the ends of justice," the court refused to reverse the judgment on account of the absence of the accused at the time of the interlineation of the words added to the instruction, because, upon consideration of the whole record, it was of the opinion that his substantial rights were not prejudiced thereby. The following statement of these rulings of the court appears in the concluding paragraph of the opinion:

"One charged with the commission of a felony cannot be tried during his absence from the court room, *and when any step is taken during the trial in the absence of the prisoner the record must show affirmatively that he could in nowise have been prejudiced by it, else this court will reverse the judgment. The evidence in this case is so plain as to the guilt of the accused and the enormity of the offense, that no slighter punishment could have been inflicted, and we are satisfied the ends of justice require that the judgment should be affirmed.*"

As stated, the rule announced in the case, *supra,* places upon the Commonwealth in every case, in which the accused is convicted of a felony, the burden of showing affirmatively, by the record produced on the appeal, that the accused could in nowise have been prejudiced in his substantial rights by any step that may have been taken during the trial, in his absence.

An examination of the few cases, other than those already considered, in which the affirmance of judgments of conviction for felony resulted, notwithstanding the doing of some act or taking of some step during the trial, in the absence of the accused, will, we apprehend, demonstrate that in each of them it affirmatively appeared from the record: 1st, that the accused could not have been prejudiced in any substantial right by the error; and 2nd,

that the evidence presented by the record so convincingly established his guilt as to destroy every hypothesis of innocence.

The case of Howard v. Comlth, 118 Ky. 1, cited by counsel, throws little light upon the question under consideration. In that case, while the court was engaged in impaneling a jury, the Commonwealth's attorney moved that one, Alexander, who had been accepted as a member of the jury, subject to the right of peremptory challenge by either party upon the filling of the panel, be discharged upon the ground that he had formed and expressed an opinion as to the merits of the case. Before passing on the motion the court by request of the appellant's counsel, made in appellant's presence and hearing, took Alexander to an adjoining room and privately examined him touching the charge made by the Commonwealth's attorney, following which and the return of the court to the court room and presence of the appellant and his counsel, an order was entered discharging Alexander from service on the jury. To this order and another, then entered, overruling his motion to discharge the remaining jurors and cause another jury to be summoned, the appellant by counsel duly excepted.

In refusing, on the appeal of the case, to hold that the action of the trial court referred to was such error as entitled the appellant to a reversal of the judgment of conviction, we, in the opinion, in part, said:

"At the time the examination of Alexander took place, and when he was discharged, the jury had not only not been sworn, but it had not been completed. There are many rights, some of them guaranteed by the Constitution, which one charged with crime may not waive, and should not be permitted by the courts to waive—such as the rights of trial by jury, the right to be heard by himself and counsel, to demand the nature and cause of the accusation against him—and yet others, the assertion of which may unexpectedly become necessary for his protection during the progress of the trial. But we are unwilling to say that one charged with felony, and being in court, as was the appellant, with counsel at hand ready and competent to advise him of his rights, may not, in advance of the swearing of the jury and before he is placed in jeopardy, consent to a private examination by the court of a juror against whom complaint has been made, for the purpose of ascertaining whether he was

qualified to retain his place as one of the jury to try the case. Nor do we think it is affirmatively shown by the record in this case that any injury resulted to the substantial rights of the appellant by Alexander's dismissal from the jury. It is, however, beyond our province to reverse this case for error, if there were any, in excluding Alexander from the jury. Our right to do so is expressly forbidden by section 281, Criminal Code. . . . ''

The dissimilarity between the facts of the Howard case and those of the case at bar will readily be discovered. In that case the alleged error of the trial court, as well as the appellant's waiver of the error, occurred when the latter was present and before the jury was completed or sworn; whereas in the instant case the error of the trial court complained of was committed by the trial court after the introduction of the evidence, argument of counsel and submission of the case to the jury, in the absence of the accused and without his consent or knowledge.

The question presented for decision is, was the action of the trial court in sending, in the absence of the appellant and without his consent given in person, its official stenographer to the jury and permitting the reading by the latter of his stenographic notes of the evidence to the jury, such error as will necessitate the reversal of the judgment of that court? We think the question must be given an affirmative answer. While there are, as we have seen, some rights that may be waived during the trial by a defendant charged with the commission of a felony, we do not think it in his power to waive, in a capital case, his right to be present both in person and by counsel at every step in the progress of the trial, or any other like right guaranteed him by the Constitution. That such is the law has been declared in numerous cases decided in this and other jurisdictions. Strassell v. Comlth, 4 L. Rep. 618; Keeling v. Comlth, 178 Ky. 624; Wass v. Comlth, 50 S. W. 271; 16 Corpus Juris, section 2614.

Our meaning is well stated in the following excerpt from the opinion in Keeling v. Comlth, *supra*:

"There are some rights so securely preserved by the Constitution to the accused in capital cases that he may avail himself of their protection, although he has failed to observe the rules of practice requiring an objection to be made or any exception to be saved, in order that an error committed by the trial court may be taken advantage of on appeal. . . . ''

In many of the states the courts of last resort, treating of the doctrine of waiver, seem to make a distinction between capital cases and other felonies, holding that the accused cannot in a capital case, even in person, waive his right to be present during the trial. Gladden v. State, 12 Fla. 562; Lee v. State, 101 Miss. 386; Paddler v. State, 98 Miss. 40; Stanley v. State, 87 Miss. 86; Mourer v. People, 43 N. Y. 1; State v. Dry, 152 N. C. 813; State v. Kelly, 97 N. C. 404; Prine v. Comlth, 18 Pa. 103; Sherrod v. State, 20 L. R. A. (N. S.) 508.

If the accused cannot in person waive his constitutional right to be present during the trial it necessarily follows that such right cannot be waived for him by counsel. 16 Corpus Juris, page 818; Cook v. State, 60 Ala. 39.

We therefore think it clear from the provisions of section 11, Bill of Rights, Constitution, and cases cited in the opinion, that the consent of appellant's counsel to the reading by the court reporter of the stenographic notes of the evidence to the jury in their room did not obviate the necessity of appellant's presence in court at the time the performance of that duty by the reporter was ordered by the court; nor did such consent of counsel amount to a waiver of the appellant's right to then be present; and certainly the reading of the evidence by the reporter to the jury in their room, where neither appellant nor his counsel could be or were privileged to go, also deprived the former of another right guaranteed him by section 11, Bill of Rights, Constitution, viz.: the right to meet face to face the witnesses testifying against him, which in Kaelen v. Comlth, 84 Ky. 354, was held to be of such importance to the accused that the legislature is without power to authorize the taking of depositions to be used against him, although he may use depositions in his own behalf, in such state of case as the legislature may allow.

It is patent that the affidavit of the official reporter does not reveal all that occurred in the jury room during his reading of his notes of the evidence to the jury; but we do know from it that some things were said in conversation he had with the jury and in conversation between jurors in his presence regarding the evidence which were improper in the absence of the appellant, his counsel and the court. Upon request of the jury that their minds be refreshed regarding the evidence, they should have been brought into the presence of the court, the accused, his counsel and counsel for the Commonwealth, and the

request complied with in the manner provided by the Code.

In the situation that resulted from the action of the trial court in permitting, after the submission of the case, the reading of evidence to the jury, we can only speculate as to its effect upon the jury and verdict; and, obviously, in a case in which the punishment inflicted by the verdict is the severest known to the law, resort should not be had to speculation in order to determine whether the verdict was superinduced by an error of the trial court. In the face of so grave an error as that committed by the trial court in this case the appellate court should not stop to weigh probabilities, or try to discover from the record whether it was prejudicial to the accused, but must assume that the error amounted to such an invasion of appellant's constitutional rights as to deprive him of a fair and impartial trial. Numerous civil cases may be found in which it was held that such an error as that committed by the trial court in this case compelled the setting aside of the verdict. In Luttrell v. Maysville and Lex. R. Ry. Co., 18th B. Mon. 291, it was held reversible error for the jury, after the submission of the case, to call to their room and re-examine a witness who had testified on the trial. In Lou. Cinti. and Lex. R. R. Co. v. Cavens, Admr., 9 Bush 559, the refusal of the trial court to send a stenographic report of the testimony of a witness to the jury room after the submission of the case was approved; and in L. H. & St. L. R. R. Co. v. Morgan, 110 Ky. 740, the judgment was reversed because of error of the trial court in sending to the jury room, after the submission of the case, a deposition to be re-read.

We do not agree with counsel for appellant that chapter 163, Acts 1920, under which he was convicted, is violative of section 51, Constitution, as subsection 1, section 1137, Kentucky Statutes, is set out and published at length in the act as amended and re-enacted. As this question has been fully considered and settled adversely to appellant's contention in Board of Penitentiary Commissioners v. Spencer, 159 Ky. 255, and cases therein cited, we will not extend this already lengthy opinion by a further discussion of it.

As there will probably be another trial of the case, we refrain from discussing or expressing any opinion as to the appellant's further contention that the verdict is flagrantly against the evidence. Because of the error of

the trial court in permitting the reading of the stenographic report of the evidence to the jury, after the submission of the case, the judgment is reversed for a new trial, not inconsistent with the opinion.

The whole court sitting.